[Civ. No. 19574. Fourth Dist., Div. Two. Mar. 9, 1978.]

LEONA J. KRAUSE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
GUARANTY FINANCIAL SERVICES, Real Party in Interest.

**COUNSEL**

Roger A. Saevig for Petitioner.

No appearance for Respondent.

Howser, Gertner & Brown and N. Brooke Gabrielson for Real Party in Interest.

## OPINION

**KAUFMAN, J.**—In proceedings pursuant to Code of Civil Procedure section 690.31,[1] the Orange County Superior Court granted real party's application for writ of execution against a dwelling house. The homeowner petitioned this court for a writ of prohibition and/or certiorari to review the propriety of the procedure followed and the validity of the order granting issuance of the writ of execution. We treated the petition as one for mandate and issued an alternative writ and a stay order.

### *Facts*

The facts are not in dispute, having been stipulated to for the most part.

Petitioner, a widow, owns and resides in a dwelling house at 2208 South Anchor Street, Anaheim. On January 8, 1974, she executed and recorded a declaration of homestead with respect to that property. It is stipulated the declaration of homestead is valid and the amount of the homestead exemption is $20,000.

On December 15, 1975, real party recovered a money judgment against petitioner in the amount of $22,476.12. On August 11, 1977, pursuant to section 690.31, real party applied to the Orange County Superior Court for issuance of a writ of execution against petitioner's dwelling house. The court issued an order to show cause. On September 8, 1977, petitioner was personally served with a copy of the application and order, and on October 27, 1977, the matter came on for hearing.

As of the date of hearing six abstracts of judgments, including real party's, had been recorded subsequent to petitioner's declaration of homestead. The judgments total in excess of $100,000. In addition, the property is encumbered by a first deed of trust with an unpaid balance of $18,236.

It was stipulated that the full value placed upon the dwelling house by the County Assessor of Orange County as of July 1, 1977, was $44,640 and that, if called to testify, a qualified real estate appraiser would testify the fair market value of the dwelling house is approximately $66,000.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

Having taken the matter under submission, on October 28, 1977, the court made a minute order granting issuance of the writ of execution, but staying the effect of the order for 20 days to enable petitioner to seek a writ.

### Contentions

Petitioner contends the exclusive method for enforcing a money judgment against a homesteaded dwelling house is the procedure prescribed by Civil Code sections 1245 through 1259. Alternatively, she contends that, if section 690.31 is applicable, the recorded abstracts of judgments in excess of $100,000 are liens against the property (§ 674, subd. (c), *infra*) and that since their amount exceeds the fair market value of the property, issuance of a writ of execution against the dwelling house is impermissible.

Real party contends the 1976 enactment of section 690.31 impliedly repealed any inconsistent provisions found in Civil Code sections 1245 through 1259 so that section 690.31 prescribes the applicable procedure. Real party further contends that since the dwelling house was home-steaded, the recorded abstracts of judgments did not create liens against the property (Code Civ. Proc., § 674, subd. (a); *Boggs* v. *Dunn,* 160 Cal. 283, 285-286 [116 P. 743]; see *Thomas* v. *Speck,* 47 Cal.App.2d 512, 519 [118 P.2d 365]), and the fair market value of the property exceeded the combined amount of the only encumbrance ($18,236) and the exemption ($20,000), so that issuance of a writ of execution was proper.

We have concluded that the procedure for enforcing a money judgment against a homesteaded dwelling house is that prescribed by Civil Code sections 1245 through 1259 and that those provisions of the Civil Code were not impliedly repealed by the enactment of Code of Civil Procedure section 690.31. Accordingly, except as it may be incidentally involved in our discussion of the principal problem, we do not reach the question whether the recorded abstracts of judgments would have been considered liens against the property if the applicable procedure were that prescribed by section 690.31.

### Discussion

Since 1872 the procedure for enforcing a money judgment against a homestead has been that prescribed by Civil Code sections 1245 through 1259. The procedure may be outlined as follows. Proceedings are

initiated by the judgment creditor's obtaining a writ of execution as authorized by Code of Civil Procedure section 681 and causing it to be levied on the homesteaded property. (Civ. Code, § 1245.) Within 60 days after levy the creditor is required to petition the superior court for the appointment of appraisers. (Civ. Code, §§ 1245, 1246.) A copy of the petition with notice of the time and place of hearing is required to be served upon the homestead claimant. (Civ. Code, § 1248.) On a requisite showing at the hearing, including that the value of the homestead over and above all liens and encumbrances thereon exceeds the amount of the homestead exemption, the court appoints appraisers (Civ. Code, §§ 1246, 1249) who view and appraise the property and make their report (Civ. Code, §§ 1251, 1252). If the value of the property exceeds all liens and encumbrances and the amount of the homestead exemption, the court either divides the property and orders a portion sold (Civ. Code, § 1253) or directs sale of the whole (Civ. Code, § 1254). Civil Code sections 1256 and 1257 provide respectively the priority for application of proceeds of sale and extension of the protection of the homestead exemption to the portion of the proceeds paid to the homestead claimant.

In 1974 (Stats. 1974, ch. 1251 [operative July 1, 1975]) the Legislature enacted former Code of Civil Procedure section 690.235 providing for a dwelling house exemption in the same amount as the homestead exemption. That legislation created no conflict with Civil Code sections 1245 through 1259 because section 690.235 expressly provided the dwelling house exemption was not available to a debtor if he or his spouse had an existing declared homestead on any property in the state and, more importantly, the legislation did not purport to make any significant change in the law pertaining to issuance of writs of execution[2] and the prescribed method for claiming the dwelling house exemption was with minor exceptions the same as that for claiming any other exemption from execution pursuant to Code of Civil Procedure section 690.50.

In 1976 the Legislature repealed former Code of Civil Procedure sections 690.235 and 682b (see fn. 2, *ante*) and enacted section 690.31 with an operative date of July 1, 1977. (Stats. 1976, ch. 1000.) In 1977 the Legislature amended section 690.31 and related sections giving the

---

[2]Section 1 of the act (Stats. 1974, ch. 1251) enacted Code of Civil Procedure section 682b which required each application for a writ of execution against a dwelling house to be accompanied by a notice informing the homeowner of the possibility of claiming a dwelling house exemption and making reference to the procedure for so doing pursuant to Code of Civil Procedure section 690.50.

amendatory act an operative date of July 1, 1977, the same date as the operative date of the 1976 legislation. (Stats. 1977, ch. 305.) Subdivisions (a) and (b) of section 690.31 prescribe a dwelling house exemption in the same amount as the homestead exemption much as was provided by former section 690.235. Subdivisions (c) and (d) prescribe the procedure to be followed by a judgment creditor in obtaining issuance of a writ of execution. In outline, the judgment creditor is to file a verified application stating specified facts; the court issues an order to show cause setting a time and place for hearing; a copy of the application, the order to show cause and a prescribed notice[3] are required to be served on the debtor. It is clear from subdivisions (e) and (f) that, at the hearing on the order to show cause, the court is to determine whether the judgment debtor is entitled to the dwelling house exemption including, where that is in issue, whether the current value of the dwelling over and above all liens and encumbrances thereon exceeds the amount of the allowable exemption. If it is shown the dwelling house exemption is inapplicable or that the value exceeds the amount of the exemption plus all liens and encumbrances, a writ of execution issues. Although section 690.31 does not itself provide for or prescribe the manner of sale, subdivisions (j) and (k) respectively prescribe the priority in which the proceeds of an execution sale are to be applied and extend the exemption to the portion of the proceeds of sale paid over to the debtor.

It is apparent that the procedures prescribed by section 690.31 are inconsistent in many material respects with the procedures prescribed and contemplated by Civil Code sections 1245 through 1259. Under the Civil Code, appraisers are not appointed and the value of the property is not determined until after issuance and levy of a writ of execution which is had pretty much as a matter of course; the valuation is by appraisal; if the value of the property exceeds the amount of the exemption plus the amount of all liens and encumbrances, the result may be a division of the property and sale of a portion or sale of the whole under supervision of the court. The order in which proceeds are to be applied and extension of the exemption to those proceeds paid to the debtor are prescribed. Under section 690.31 no writ of execution may issue until application is made and a hearing is had at which the value of the property and the availability of the exemption are determined; if the value of the property exceeds the amount of the exemption plus the amount of all liens and encumbrances, the result is the issuance of a writ of execution and, apparently, an execution sale. The order in which proceeds are to be

[3] The prescribed notice supplants the notice that had been required by former section 682b.

applied and extension of the exemption to the proceeds paid to the debtor are provided for. Significantly, while the procedure in both instances permits the judgment creditor to reach the value of the property in excess of the amount of the exemption and all liens and encumbrances, a recorded abstract of judgment appears to create a lien for purposes of section 690.31 (Code Civ. Proc., § 674, subd. (c))[4] but not for purposes of Civil Code sections 1245 through 1259 (Code Civ. Proc., § 674, subd. (a)); *Boggs* v. *Dunn, supra,* 160 Cal. at pp. 285-286; see *Thomas* v. *Speck, supra,* 47 Cal.App.2d at p. 519).

To support its contention that the enactment of section 690.31 impliedly repealed all inconsistent provisions found in Civil Code sections 1245 through 1259, real party relies on the familiar rules of statutory construction that where two acts of the Legislature are in conflict, the more specific controls the more general and the later enactment prevails over the earlier. We have concluded these rules are inapplicable because, properly viewed, the two statutory schemes are not in conflict. They simply apply to different situations. The procedures set forth in Civil Code sections 1245 through 1259 apply to the enforcement of a money judgment against real property with respect to which a declaration of homestead has been recorded. Section 690.31 and its statutory relations apply to the enforcement of a money judgment against all other dwelling houses.

The only substantial obstacle to this construction of the statutory schemes is the language of subdivision (c) of section 690.31: "Whenever a judgment creditor seeks to enforce a judgment against a dwelling house, . . . the judgment creditor shall apply to the proper court in the county in which the dwelling house is located for the issuance of a writ of execution. . . . The application shall be verified and describe the dwelling house and state that either or both of the following facts exist: [¶] (1) The dwelling house is not exempt, the reasons therefor, and (i) that a reasonable search of the records of the office of the county recorder has not resulted in the finding of a declared homestead of the debtor or the spouse of the debtor on the subject dwelling house . . . . [¶] (2) The

---

[4]Subdivision (c) of section 674 was added by section 1 of the same act in which section 690.31 was enacted (Stats. 1976, ch. 1000, § 1). It reads: "With respect to real property containing a dwelling house judicially determined to be exempt from levy of execution pursuant to the provisions of Section 690.31, as distinguished from property subject to a declared homestead created pursuant to Title 5 (commencing with Section 1237) of Part 4 of Division 2 of the Civil Code, a judgment lien created pursuant to subdivision (a) of this section shall attach to such real property notwithstanding the exemption provided by Section 690.31."

current value of the dwelling house, over and above all liens and encumbrances thereon, exceeds the amount of the allowable exemption."

Admittedly, this language is very broad, broad enough to encompass all dwelling houses whether homesteaded or not. Since Civil Code sections 1245 through 1259 do not specifically provide a procedure for obtaining issuance of a writ of execution, it is tempting to attempt to construe the statutes so as to conclude that the procedure prescribed by section 690.31 for *obtaining issuance* of a writ of execution pertains to all attempts to enforce a money judgment against a dwelling house, whether homesteaded or not, and that the procedure found in the Civil Code applies to homesteaded dwelling houses *after issuance* of a writ of execution. However, as previously mentioned, the issuance of a writ of execution under section 690.31 involves a determination of the value of the property at a different stage of the proceedings and by a method different than that prescribed in the Civil Code and treatment of recorded abstracts of judgments in determining the existence of the exemption appears to be different under the two statutory schemes. It does not appear possible, therefore, to construe section 690.31 as prescribing the procedure for obtaining issuance of a writ of execution in all cases and Civil Code sections 1245 through 1259 as prescribing the procedure to be followed thereafter in respect to a homesteaded dwelling house only.

■ However, the presumption is against repeal by implication, especially where, as here, the earlier act has been generally understood and acted upon. (*Cal. Drive-In Restaurant Assn. v. Clark*, 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *Penziner v. West American Finance Co.*, 10 Cal.2d 160, 176 [74 P.2d 252].) The doctrine of repeal by implication is based on the presumed intention of the Legislature (see *Christy v. B. S. Sacramento Co.*, 39 Cal. 3, 10; *Hammond v. McDonald*, 32 Cal.App.2d 187, 192 [89 P.2d 407]) and will not be applied where it appears the Legislature did not mean to repeal the earlier act. (*Hammond v. McDonald, supra*, 32 Cal.App.2d at pp. 192-194.) ■ Here, indications abound that the Legislature had homesteads and the procedures prescribed in Civil Code sections 1245 through 1259 fully in mind when it enacted section 690.31, and, that being so, had it meant to repeal all or part of the procedures prescribed by the Civil Code, it would undoubtedly have done so expressly.

The text of section 690.31 itself contains several references to the homestead exemption and the law pertaining thereto. Subdivision (a) in which the dwelling house exemption is set forth states the exemption is in the same amount as the debtor "would be entitled to select as a homestead pursuant to Title 5 (commencing with Section 1237) of Part 4 of Division 2 of the Civil Code." Subdivision (c), the troublesome language of which has been quoted, specifies one of the alternative facts to be set forth in the application for writ of execution is that a search of the records "has not resulted in the finding of a declared homestead. . . ." The notice prescribed by subdivision (d) also refers to "a declared homestead." Even more significantly, section 1 of the very same act by which section 690.31 was enacted added subdivision (c) to Code of Civil Procedure section 674 to provide that "a judgment lien created pursuant to subdivision (a) of this section [674] shall attach" to a dwelling house notwithstanding the exemption provided by section 690.31 "as distinguished from property subject to a declared homestead created pursuant to Title 5 (commencing with Section 1237) of Part 4 of Division 2 of the Civil Code . . . ." (See fn. 4, *ante.*) In addition, we note that Civil Code section 1257, a part of the procedural scheme relating to execution sale of homesteads, was amended and reenacted in the very same session of the Legislature in which section 690.31 was enacted. (Stats. 1976, ch. 463, § 3.) It is unlikely the Legislature would amend and reenact one part of the Civil Code procedure and then repeal the whole thereof sub silentio in the same legislative session.

Moreover, our conclusion the Legislature did not intend to repeal any part of the procedure prescribed by Civil Code sections 1245 through 1259 is confirmed by a significant item in the legislative history of section 690.31. The bill enacted as section 690.31 on September 16, 1976, was Assembly Bill No. 2698. The analysis of that bill as amended August 5, 1976, prepared for the Senate Committee On Judiciary contains on page 4 the following comment: "Present law allows a debtor to protect his home against the claims of creditors in one of two ways. He may, in advance of suffering a judgment against him, claim a 'homestead' under Title 5 (commencing with Section 1237) of Part 4 of Division 2 of the Civil Code or, *after* [orig. emphasis] the home has been levied upon under a writ of attachment or execution, obtain a 'dwelling house exemption' (Secs. 690, 690.235, & 690.50, C.C.P.). In either case, the value of the exemption is now $20,000, but will increase to $30,000 on January 1, 1977, under legislation enacted this session (Ch. 132, Stats. 1976). *This bill would revise the rules governing the dwelling house exemption only, and would not affect homesteads.* [Emphasis added.]"

Undoubtedly many persuasive arguments could be presented that a single procedure applicable to both the homestead exemption and the dwelling house exemption would be desirable and that the procedures prescribed by sections 674, subdivision (c) and 690.31 afford debtors more protection than the procedures prescribed by Civil Code sections 1245 through 1259. (But cf., Civ. Code, §§ 1253, 1255.) We are cognizant, too, that the enactment of sections 674, subdivision (c) and 690.31 and their interrelation with Civil Code sections 1245 through 1259 give rise to a number of troublesome questions most of which are not resolved by today's decision. (See 3 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1977) § 16:50, pp. 89-98.) These matters, however, bear not so much on our determination of the question before us as the urgent need for further consideration and action by the Legislature.

### Disposition

Let a peremptory writ of mandate issue to the Orange County Superior Court commanding it to vacate its order of October 28, 1977, granting real party's application for writ of execution and to enter its order denying real party's application without prejudice to its proceeding under Civil Code sections 1245 through 1259. The alternative writ heretofore issued is discharged and the stay heretofore made is vacated.

Tamura, Acting P. J., and McDaniel, J., concurred.